May it please the Court, my name is Anita Milanovic and I represent Montanans for Community Development, or MCD in this case. I'd like to reserve five minutes for rebuttal. MCD challenges Montana's campaign finance laws on four principal fronts. First, MCD does not know with certainty its political committee status or its reporting obligations because at 111 pages, the law is circular, repetitive, redundant, and discretionary in its application. Second, if MCD is a political committee under Montana law, it cannot be under Buckley and this Court's precedence. Third, if MCD circulates its intended ads without registering as a political committee, it will be subject to an investigatory process that does not adequately protect its privacy and association, excuse me, associational rights. And last, MCD knows it will be investigated because the Commissioner of Political Practices Office has a history of intentionally and purposely discriminating against conservatives that, consistent with the law as they understand it, do not disclose their spending and spending sources. First, Montana campaign finance statutes and regulations are vague. A statute must be sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited. In that regard, it seems to me that your main contention, although it seems to be stated in a whole lot of different ways and places, is that the use of the word may and the phrase not limited to or something similar is no good. Yes, Your Honor. That's basically it? Well, there are a variety of reasons why there is vagueness here. That is among them. And that would relate to what I had alluded to as the discretionary elements or discretionary opportunities for the Commissioner. The use of may, the Commissioner may consider one of 11 factors or seven factors. The district court Isn't that a way to limit discretion? I'll let you go to the store, but you may buy the thing you want. But in the context that it is used in these statutes, when the Commissioner may consider the following He's allowed to consider the following. But that does not mean that he may only consider the following. I would disagree, Your Honor. I guess that's my interpretation. Do you have a case that supports that the use of the word may all by itself is no good? Well, there is a Montana case that we do cite to this court. That is a Hardenburg case that talks about the word may and says that, and I'll just quote it to you, the cite to it is 146P second 151. The court says we expressly, we also expressly disapprove of the whole holding in the Interstate Lumber Company case that the word may should be given the force of must. The law is that the word may in the statute must be construed according to the context and approved usage of the language and that in construing the statute, every word, clause and sentence must be given effect, if it is possible to do so, to the end that its different provisions may be consistent and harmonious and each be assigned an intelligent meaning. And when the court looked at the word may there, the Montana court has said that may is a permissive term, but it is not a mandatory term. So while it gives, so when the commissioner may consider factors, it has permission to consider those factors, but those factors are not necessarily exclusive. In addition to the discretion that has been afforded to the commissioner, and what he How is it used in this statute? In the permissive manner or the mandatory manner? Or both? I believe it is used in a permissive manner, but the commissioner may consider factors. It is used, some examples of how it is used, when trying to determine whether something is a reportable election activity and whether it is coordinated, the commissioner may consider 11 criteria. And so the commissioner is trying to decide whether there is coordination for this reportable election activity and so can look at those criteria. Isn't that akin to my example, please go to the store and you may buy the following 11 items? My husband would buy those 11 items. He wouldn't think that that was discretionary. I guess I wouldn't understand that directive that way. If I was sent to the store and was told I may. You wouldn't get the eggs and milk. You would get the chocolate chips and something else. If I said go to the store and you may buy these 11 items, you would think I just can go to that list and go do something else. Well, I might say I might buy those items and buy additional items. Or I might choose to do some but not all of the list. There is nothing about that I may purchase a list of items. There is nothing that precludes me from going beyond the list and there is nothing that precludes me from exhausting the list either. And so in that regard, the commissioner has discretion as to, you know, when it is deciding whether to, in this example that I've given, whether reportable election activity is coordinated, he may consider those 11 factors, he may consider something else. Additionally, as we've observed, that the political committee definition explicitly and the expenditure definition and contribution definition are all written in a circular fashion. Now, the district court has attempted to remedy this by adopting an interpretation that the commission presented to it. We do not believe that it is appropriate for that court to have adopted with the commissioner's interpretation. Interpretations, as this court has recognized, are the province of state courts and so the interpretation adopted is not a state court interpretation. Moreover, the adoption is not an interpretation that is readily susceptible to a narrowing construction. When you look at the newly written definition that the district court has adopted, excluded from it are aspects of the provision that are otherwise included. In the recent Montana Supreme Court case of Model v. Woodick, the court made clear that when interpreting statutes, the role of the court is to simply ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Can I go back to your vague desk question for one minute? There's a pretty robust doctrine of constitutional avoidance that if something can be interpreted in a way to avoid a constitutional infirmity, it will be. The state has argued that may means what I was suggesting when I gave the grocery list example. And if we were to interpret it that way, it would not in fact be vague. So isn't that what we should do if there are two options? Rather than find a constitutional problem, is limit the discretion that you claim is overbroad. I do not believe that this court can limit it in that way because by the state has said that's what they mean. So why can't we hold them to that? Well, adopting a litigation position of a party may not, does not give any comfort to my client. Well, no, they hate the whole thing. It's long and they don't like it. And we get that. But in terms of the sort of way in which we're supposed to analyze things, if we can adopt a constitutional versus a potentially unconstitutional interpretation, don't we have to take the one that is not problematic? Well, it would seem to me that in order to make the statute not vague, to interpret may, may would in fact have to become must. The commissioner must consider the problem. Well, no, it's contextual. It's contextual. I'm asking a more theoretical question and you're not wanting to answer it, I guess, but that's okay. Well, and if there is a way, I do acknowledge that if there is a way to interpret a statute to avoid an unconstitutional outcome, a State court can do that. This Court is limited in what it can do in terms of interpretation to only what it is reasonably susceptible in terms of a narrowing construction. And so if that interpretation is deemed by Your Honors as a narrow, you know, readily susceptible of a narrowing construction, if that's the reason, then yes. But if the Court is trying to avoid an unconstitutional outcome, that is reserved to the State courts who interpret the law and not, it is not for this Court to consider. I had a question about your claim of individual animus on the part of the former election head. I don't remember the exact title. That person is no longer in office who was alleged to have had a personal bias against your clients and the views that they represent. Doesn't that make this moot because there's no similar personal animus on the part of the current person? Well, there has, MCD has not had an opportunity to do any discovery or look into that issue with the new commissioner. But that would be a new claim, though. The person that you complained of isn't there anymore, right? That is correct. That is correct. We do know, you know, and I understand your mootness concern. And one thing I will say, we do know that there is an exception to the mootness doctrine where it is capable of repetition yet evading review. In Montana, there was a series of commissioners that served for one year, two years, three years, and that is the situation that could happen again. Maybe it wouldn't happen here. We have now a confirmed commissioner who sits for six years. But that doesn't preclude a situation like that occurring again where a commissioner might be appointed in recess and take advantage of an opportunity to interpret vague laws in a way that advance an agenda that they might have. That seems pretty speculative. And that is fair, Your Honor. And that is fair. That is correct, Your Honor. And we have seen that the new commissioner, you know, he continues to pursue litigation against these organizations that are premised on this discriminatory conduct. And he has been vocally supportive of those outcomes. But we do recognize that mootness is a legitimate concern here. But we do think that that underscores the importance of ensuring that the law isn't vague to prevent, as best as possible, taking advantage of vague laws to discriminate in the future. Montana's political committee definitions are also overbroad. A regulation or statute is overbroad if it does not aim specifically at evils within the allowable area of state control, but, on the contrary, sweeps into its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech. And that is from Klein out of the circuit. In Buckley v. Vallejo, the U.S. Supreme Court, recognizing that unambiguous campaign-related speech, or spending, was the focus and priority of campaign finance regulation, interpreted the federal political committee definition to only apply to organizations that have a major purpose, of which is the nomination or election of a candidate. It recognized that the government has an interest in disclosure to, quote, as to where political campaign money comes from and how it is spent by the candidate, end quote, to aid the voters in evaluating those who seek office. This Court has recognized in Human Life of Washington that the major purpose test is not in force here, or not a constitutional requirement, rather, but that a primary purpose or a priority would be equally constitutionally sufficient for purposes of establishing the parameters of the application of a political committee definition. Similarly, in a subsequent Ninth Circuit decision of Yamada, the Court said the purpose, the purpose of nominating or electing a candidate could also, was also constitutionally sufficient to justify establishing political committees within that ambit. But in Montana, political committee status does not turn on any of these criteria, and is not limited to unambiguously campaign-related spending. In fact, it is inherently broader, because it reaches electioneering communications. And it's important to note that electioneering communications here in Montana are not the same as those in federal law, which are tied to express advocacy and the functional equivalent. And electioneering communication in Montana is expressly not express advocacy and not the functional equivalent or the appeal to vote. Moreover, MCD does not meet any of these criteria, either, whether it be a primary purpose, the purpose, a priority, significant participant. In its bylaws, MCD indicates that the primary purpose, that it promotes and encourages policies that create jobs and grow local economies throughout Montana. This is its priority. This is its purpose, the purpose, a primary purpose. Doesn't it matter what it actually does? I mean, oftentimes organizations have extremely broadly stated or vague or general statements of their mission, but then it depends on what they actually go out and do. Well, this, MCD has yet to do anything. So having not done anything, I mean, how could, if we're trying to establish a primary purpose, a purpose of the organization, the bylaws seem the most obvious place to look, to determine that priority. But we can also look at the ads that they've offered as well. Right. That's what I was going to say. If you've done nothing and don't intend to do anything, then you wouldn't like standing, which is the other issue. But you specifically said, this is what we want to do. This thing is what we want to do. So isn't that what we look at and not the sort of generic we love birds or whatever it is their general mission may be? I think the bylaws are a good place to start. Why aren't we supposed to look at what the ads are, what they are trying to do? And I do think that that is a valuable or an important thing to look at in this context as well, particularly since there is no history that can be looked to to determine what they have done in the past. So looking at the ads here, it is clear that these ads are designed for this purpose, promote and encourage policies that create jobs and grow local economies throughout Montana. The ads are promoting development in the oil and gas industry. They refer recipients to look into a five part plan that Energy 21 has advanced. And so it is it is it is clear that they are not even incidentally engaging in political advocacy. You're down to about three minutes. May it please the court. My name is Matt Coconauer. I'm assistant attorney general for the state of Montana here today, representing the state defendants and police in this matter. With all of the various messages competing for voters attention in an election, the ability to know who is behind those messages, who's financially behind those messages is of critical importance. The laws that are at issue here today provide the Montana voters with that information. And this court has upheld laws very similar to these in cases like Alaska Right to Life Committee and Human Life Washington v. Brumcickel. The district court properly upheld them here by correctly applying the principles of standing vagueness and the exacting scrutiny standard to determine that Montana's laws were substantially related to our important interests of our voters, knowing who is behind the law or behind the spending and who's trying to influence them. I want to turn to standing first, since that didn't get discussed earlier. The district court determined that M.C.D. lacked standing to challenge the statute authorizing the commissioner to investigate alleged campaign finance violations, that they lacked standing to challenge regulations that were not in effect when M.C.D. filed its complaint, and that they lacked standing to bring a viewpoint and equal protection claims. Yeah, the one thing that the ones that were not in place yet went into effect a week or 10 days or something after the filing of the complaint. And isn't there some precedent that says there's something that's inevitable, it's not speculative, as distinct from, say, the investigation that if they violated and if they got investigated, that would be way down the road. So why isn't there standing with respect to the regulations that immediately went into effect? And, Your Honor, I'm not aware of that precedent. Opposing counsel has not cited that. The precedent that I'm aware of is from the Yamada case, which says that you look at the law in effect at the time that the complaint was filed. And when the complaint was filed here, the regs that they attempted to challenge were not effective. They were not applicable to anybody, and they could not have been enforced against anybody. The commissioner, hadn't the commissioner been quoted as saying that they were following the regulation even though it was not in effect yet? No, Your Honor. What the commissioner had been, the quote that they point to is the commissioner saying that they were the policy of the office, but he also clarified that they were not enforceable and they were not the law. And regardless, by statute, regulations that are not, that don't have the force of law cannot be enforced against anybody. Rather than coming up with whatever the precedent is that I know Judge Graber will find, the idea that they might have amended their complaint to somehow cure the springs hollow when they did not file a motion to amend after the brief was filed on standing, they didn't file anything in the two months before the hearing where it was argued, and they didn't file anything within the five months before the next, the decision came out. So I don't think you can bypass standing in favor of judicial economy. I think it's not aspirational. No, it's not, it's not, it's not bypassing. It's something that is inevitable and immediate as distinct from something that is speculative and who knows when. And if there's precedent on that, I mean, obviously that would, that would inform the discussion. I think as far as the speculative nature of it, one only needs to look at MCD's complaint to recognize that this was not an appropriate pre-enforcement case, given that the language that they challenged was not even the language that was adopted into the regulations. So while there may have been some laws that were going to be inevitably coming into effect, the laws that MCD challenged were not those laws. They weren't chilled by the laws that came into effect. They were chilled apparently by laws that never came into effect, that were draft language rules. So I think the standing claim still, I think they still have a problem there. I think their allegations of a chill ring hollow on the regulations that were not in effect. As for the statute authorizing campaign finance violations investigations, it's simply not appropriate for, it doesn't lend itself to a pre-enforcement challenge. It's not, it's not a prescriptive statute. On the viewpoint discrimination and equal protection challenges, as I understood the argument, I believe that they agree that the case is likely moot. So I don't want to spend a lot of time on that. If there is some question about what future commissioners do, as the judgment pointed out, there's a case in the future that they're more than welcome to bring. I think the fact that the current commissioner is requiring reporting for electioneering types of communications stems more from the fact that that's codified in our laws. It's not any sort of a discriminatory enforcement of laws. That's just the nature of the laws that are in effect. In any event, that is a moot claim. Turning to the constitutional challenges to our statutes, Montana's laws should be upheld because they survive exacting scrutiny and because they're not vague. On the exacting scrutiny standard, it's been settled that states have an important informational interest in providing information to voters. That's been put into life. This court held that that was a compelling interest. And of course, the reason is that we're a republic, that the voters are sovereign, the people are sovereign, and the ability for them to make the choices and the decisions for our country are based on them being able to make informed decisions. Being able to follow the money behind ads gives them that information. Our laws are also substantially related to that. The electronic reporting requirement allows transparency. It fosters transparency. It allows for quick reporting of information, something that Yamada pointed out was a vital window into the marketplace of ideas, as well as following campaign finance money. The paid for by attribution identifies who's behind the message and informs the public who's paying for that mailer that's in your hand. Citizens United, Yamada, Alaska Right to Life, Human Life of Washington, all cases dealing with similar types of attributions. The electioneering communications statute. Ms. Milanovic is correct that that is not limited to just express advocacy. It includes ads that are in the days and months shortly before an election that mention a candidate. Citizens United recognize that the public has an opportunity to express an opinion about a candidate shortly before an election. This serves that interest. Citizens United in this court have also said that the idea that only regulations can only reach express advocacy is not the case. What is your response to counsel's argument that if the primary purpose of the organization isn't to elect particular candidates who share the viewpoint of the organization, the law should not apply to them? Or cannot properly apply to them? Yes, Your Honor. I think, first off, the public's informational interest doesn't vary up and down depending on what a group's purpose is. And this court recognized that in Yamada. This court has rejected arguments that a major purpose or a primary purpose is required in Human Life Washington and Yamada. The standard that is applied is exacting scrutiny. And so the question becomes not is this the major purpose or the primary purpose, but does the state, does Montana have an interest, a substantial, does it have an interest in requiring groups who are spending like this to disclose their information to the voters? And they do. And in looking at that, you can look to the types of burdens that are on the committees, that are placed on the committees. And Montana does not have a one size fits all. Under our political committee definition, under that rubric, there are several different types of committees. There's incidental committees, there's independent committees, which are what we would typically think of as PACs, groups that are engaged for the sole purpose of electing candidates. The reporting requirements are very different depending on those. We have a sliding scale depending on how much advocacy you engage in and how much you don't. The political committees have what we would think of, I guess, as PAC-like burdens because they're a PAC. They have their registration requirements, they have quarterly reporting, they have monthly reporting, they report all of their expenditures, their contributions, their loans. Cash balance is at the beginning of the month, cash balance is at the end. Incidental groups who become a group to support or oppose a candidate or to send a mailer that mentions a candidate in the closing days, if they want to just do one, they can accomplish that in a single filing when they check an initial report and a closing report. They provide some basic information, again, of the type that in Canyon Ferry, this Court already noticed, were not unduly burdensome. And they can be in and out in one filing. In fact, and in our supplemental excerpts of record at 231 and 240 are the forms that the Commissioner has prepared and that those types of groups would fill out. On the vagueness, I don't want to replow all the ground that was in the briefs, but I do think that's important in looking at MCD's vagueness challenges if this Court determines they have standing to raise those challenges. Two things. One is that both this Court and the Supreme Court have never required perfect clarity in language. We're obviously reduced to language. That's what we have to work with. And we can always come up with a hypothetical that can put a piece of language into some sort of dispute. Well, of course, if something is permissive as opposed to mandatory, that's more than de minimis in its importance, isn't it? I think it can be. I think in these cases it's not, though. I think taking the examples that opposing counsel mentioned, the reportable action activity or the coordinated definition, what that reg says is that the following may be considered. But what may be considered is limited to the following. And that's a plain language reading. That's not unfettered discretion or unlimited discretion. The statute itself or the regulation itself limits that discretion. So you would read May as you are allowed to consider the following 11 things. I think that's a plain reading. That the following may be considered limits what may be considered to the following. That's correct. The second thing that I think is important to keep in mind as this Court looks through those challenges is that these are facial challenges. And as facial challenges, MCD has standing only to vindicate its own rights. It doesn't have standing to complain about the vagueness as it might apply to others who are not before this Court. In closing, I guess I would just say that there's no question that MCD has the right to talk to voters, the right to speak to voters. There's also no question that the voters have a right to know that it's MCD speaking to them. The First Amendment protects speech and disclosure allows the public a way to respond appropriately to that speech. We'd ask that you affirm the District Court. Thank you. Thank you, Counsel. Ms. Milanovic, you have some time remaining. Thank you, Your Honors. I'd like to speak briefly to the standing issue that was raised regarding the regulations and make the observation that it's not simply, you know, it is true that the Commissioner did at a hearing indicate that the regulations had been, had become the policy of the Commission, the Office of Commissioner of Political Practices, which is important because in the past in this same case, the Commission relied on and the District Court relied on the Commission's reliance on a confidentiality policy, which was the policy of the Commissioner and has never been adopted into law. And yet because it was the policy of the Commissioner, it would be considered to be enforced. But moreover, looking at what the Commissioner submitted to, for publication to the Secretary of State on November 24, this was before the amended complaint was filed, it filed a notice of adoption and publication and indicated that the COPP has adopted the following rules. The COPP has transferred and amended these rules. The COPP has repealed these rules. And this is in the excerpts of record at 785, 780 through 836. You can see all of it there. And so by all accounts, these laws, these regulations were, had come into effect, at least per the statements of the Commissioner. Opposing counsel also mentioned the attribution provision, arguing that the attribution provision was not in line with the statute. It has been upheld in Citizens United, using that as an example. However, in Montana, attribution is only required for political committees, who are already disclosing that information. And so it is redundant and under Heller would fail the narrow tailoring requirement for the provision. It is important also to recognize that with political committee status, we're not simply talking about disclosure. Disclosure could be a one-time event-driven reporting situation. But political committee status comes with it, additional obligations and burdens, finding a treasurer, which has become difficult in Montana. People are afraid to become them, because you can be sued. But the treasurer also is obligated to follow the money and keep track of it, and it does create an obligation that is not there for other organizations. So a purpose, a primary purpose, or in our opinion, a major purpose, is appropriate in that context. With that, I will, unless there are other questions. I don't believe so. Thank you, Your Honors. Thank you. The case just argued is submitted. We appreciate interesting and helpful arguments from both counsel. We are adjourned for this morning's session.
judges: Tashima, Graber, Mihm